UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
SHANGHAI ZHENGLANG TECHNOLOGY CO.,
LTD.,

                    Plaintiff,

                                        MEMORANDUM & ORDER
          -against-                     20-CV-5209(JS)(ARL)

MENGKU TECHNOLOGY CO., LTD. and
QIANAN LI,

                    Defendants.
----------------------------------X
APPEARANCES
For Plaintiff:      Shan Zhu, Esq.
                    Hang & Associates, PLLC
                    136-20 38th Avenue, Suite 11G-2
                    Flushing, New York 11354

For Defendants:     Yong Chen, Esq.[1]
                    Liu Chen & Hoffman, LLP
                    1 Penn Plaza, Suite 2508
                    New York, New York 10119

SEYBERT, District Judge:

          Currently before the Court is Plaintiff Shanghai

Zhenglang Technology Company, Limited's ("Plaintiff") motion for

a Preliminary Injunction that, if granted, would remove certain of

Qianan Li ("Li") and Mengku Technology Company, Limited's

("Mengku" and together with Li, "Defendants") game applications

from the Google Play Store platform and freeze all monetary

accounts associated with Defendants' Google Play Accounts. (Mot.,

---

[1] Through defending the motion for a preliminary injunction,
Defendants did not waive their rights to object based on personal
jurisdiction, venue, and or service or process.

1

ECF No. 19.)  Upon review of all submissions,[2] and the arguments heard at the December 16, 2020 hearing, the Court finds that Plaintiff has failed to meet its burden to obtain a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure.  Accordingly, the motion for a preliminary injunction is DENIED.

BACKGROUND

I. Facts

Plaintiff is a foreign limited liability corporation ("LLC") incorporated under the laws of the People's Republic of China.[3]  (Compl. ¶ 4.)  Plaintiff markets, designs, sells, and produces for download game applications under the federally registered trademark "LinkDesks".  (Id. ¶ 5; LinkDesks Trademark, Compl., Ex. 1, ECF No. 1-1.)  According to Plaintiff, each game application on Google Play has a "package name," or a unique identifier associated with the application.  As relevant here,

---

[2] The Court has reviewed the motion, together with the Complaint (ECF No. 1); the Declaration of Ruihua Ji, sworn to on December 14, 2020 (Ji Decl., ECF No. 27); and the accompanying Memorandum of Law (Pl. Br., ECF No. 26); Defendants' opposition papers (Defs. Opp., ECF No. 24-1), and the Declaration of Qianan Li (Li Decl., ECF No. 24-2).

[3] Defendant Mengku is an LLC incorporated under the laws of the People's Republic of China and Li is a resident of the People's Republic of China.  Plaintiff is pursuing service through the Hague Convention (see Pl. Ltr., ECF No. 22), with leave to re-file its motion for an order for alternative service (Alternative Service Order, ECF No. 13).

Plaintiff has incorporated its trademark "LinkDesks" in the "package name" it uses on Google Play, where its games applications are offered. (Compl. ¶ 7.) Plaintiff alleges that Defendants infringe on its trademark by utilizing the "LinkDesks" mark as a package name on Google Play for two game applications, Bubble Shooter Genies and Bubble Shooter Legend (the "Bubble Shooter Games"). (Id. ¶ 24.) Specifically, Plaintiff claims that whenever customers search "LinkDesks" on Google or Google Play, Defendants' Bubble Shooter Games appear. (Id. ¶¶ 25-26.) LinkDesks also appears in the sales links (or URLs) used for Defendants' Bubble Shooter Games. (Id. ¶ 27.)

In opposition, Defendants paint a different picture. Defendants state that the LinkDesks trademark, Bubble Shooter Games, and the URLs or links associated with the games were initially developed and owned by Hangzhou Huiwan Tech Limited ("Huiwan"), and that both Li and Ruihua Ji, Plaintiff's President, were major shareholders at Huiwan. (Defs. Opp. at 2.) Huiwan published the Bubble Shooter Games on Google Play in 2014 and 2016, at which time they were given a package name and URL. (Id.) In July 2018, Huiwan's shareholders reached a resolution to split Huiwan's assets and dissolve the company. (Id.; Shareholder Resolution, Li Decl., Ex. 3, ECF No. 24-2.[4]) According to the

---

[4] Many of the exhibits filed by Defendants are written in Chinese and accompanied by certified English translations. Plaintiff did

Shareholder Resolution, Li would receive six games, including the Bubble Shooter Games, and Ji would receive twenty-one games. (Shareholder Resolution at ECF p. 20.)  According to Defendants, around that time, Huiwan and Li entered into a games transfer agreement (the "Transfer Agreement") that assigned Li the rights to the Bubble Shooter Games, including the right to use the LinkDesks package names and URLs.  (Defs. Opp. at 3; Transfer Agreement, Li Decl., Ex. 4, ECF No. 24-2.)  Pursuant to the Transfer Agreement, Huiwan transferred "the rights, ownership and interests of the 6 game works, including copyright, game approval number, game-related trademark and domain name." (Transfer Agreement at ECF p. 33.)  The six "game works" and the corresponding copyrights and trademarks are listed in an attachment to the Transfer Agreement.  (Id. at ECF pp. 39-43.) Importantly, the attachment lists the two Bubble Shooter Games and their Google Play URLs, which incorporate the LinkDesks wording. (See id. at ECF p. 39.)  LinkDesks is not listed as one of the assigned trademarks, however.  (Id.)  In August 2018, Li founded Mengku to market, distribute, and provide services for its portfolio of games.  (Defs. Opp. at 4.)  In December 2018, Huiwan assigned the LinkDesks mark to Plaintiff along with twenty-one game applications.  (Id.)

---

not object to the English translations.

Defendants further represent that the parties have litigated trademark issues in the past, including through Google Play's dispute resolution procedures. (Id. at 4-5.) These issues do not appear to relate to the present dispute, although Defendants claim that Plaintiff filed this action to retaliate against Defendants for raising and prevailing on other trademark issues with Google Play. (Id.) Prior to filing the present action, Plaintiff filed a complaint in China and with Google Play alleging that Defendants infringed on its LinkDesks mark. (Id. at 5-6.) Google Play declined to act and Plaintiff voluntarily dismissed its China complaint. (Id.)

## II. Procedural History

Plaintiff initiated this action on October 29, 2020 and filed a motion for an ex parte TRO on November 19, 2020. (TRO Mot., ECF No. 14.) The Court denied Plaintiff's initial request for a TRO (Order, ECF No. 18) but granted it upon reconsideration on November 25, 2020 (TRO Order, ECF No. 20). The TRO Order granted Plaintiff's request and directed Google, LLC and Google Play to disable Defendants' Bubble Shooter Games on the Google Play Store and freeze any assets associated with these applications. The TRO Order further directed Defendants to appear and show cause why a Preliminary Injunction should not be entered.

<u>ANALYSIS</u>

I.   <u>Legal Standard</u>

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." <u>Winter v. Nat'l Res. Def. Council, Inc.</u>, 555 U.S. 7, 20 (2008); <u>Louis Vuitton Malletier v. Dooney & Bourke, Inc.</u>, 454 F.3d 108, 114 (2d Cir. 2006); <u>Jefferson v. Soe</u>, No. 17-CV-3273, 2017 WL 2881138, at *2 (E.D.N.Y. July 6, 2017). A preliminary injunction is "an extraordinary and drastic remedy which should not be routinely granted." <u>Jefferson</u>, 2017 WL 2881138, at *2 (quoting <u>Buffalo Forge Co. v. Ampco-Pittsburgh Corp.</u>, 638 F.2d 568, 569 (2d Cir. 1981)). As a result, to obtain a preliminary injunction, the movant must carry its burden by a "clear showing." <u>Id.</u> at *3 (quoting <u>Moore v. Consol. Edison Co.</u>, 408 F.3d 506, 510 (2d Cir. 2005) (citation omitted)).

II.   <u>Discussion</u>

   A. <u>Likelihood of Success on the Merits</u>

The parties agree that Plaintiff's request for a Preliminary Injunction rises or falls on its ability to demonstrate likelihood of success on its trademark infringement claim. On that issue, the parties first dispute whether the Transfer

6

Agreement authorizes Defendants to use "LinkDesks" in the URL and in Google Play package name for the Bubble Shooter Games. (Pl. Br. at ECF pp. 3-5; Defs. Br. at 7-8.) Defendants also argue that several equitable principles, including equitable estoppel, acquiescence, laches, and unclean hands, bar Plaintiff from showing likelihood of success on its trademark claim. (Defs. Br. at 9-12; Pl. Br. at ECF pp. 7-9.) Last, Defendants claim that their use of "LinkDesks" as part of the URL and package name is fair use. (Defs. Br. 11-12; Pl. Br. at ECF pp. 9-10.) At this stage of the proceedings, the Court is unable to find that Plaintiff establishes a likelihood of success on the merits because the scope of the assignment of rights under the Transfer Agreement is ambiguous, Plaintiff's trademark claim is novel, and Defendants' equitable arguments may have merit.

First, both sides make plausible arguments as to the scope of the Transfer Agreement and whether it contemplated Defendants' right to continue offering the Bubble Shooter Games using the URL and package name with the LinkDesks wording, thus precluding Plaintiff from demonstrating a likelihood of success. Coscarelli v. ESquared Hospitality LLC, 364 F. Supp. 3d 207, 225-226 (S.D.N.Y. 2019) (holding a "contract's ambiguity" precluded plaintiff from establishing likelihood of success on the merits). As noted supra, under the Transfer Agreement, Huiwan assigned to Li the "rights, ownership and interests" in the Bubble Shooter

7

Games, "including copyright, game approval number, game-related trademark and domain name." (Transfer Agreement, ECF p. 33.) Indeed, the two Bubble Shooter Games and the respective Google Play URLs, with the LinkDesks wording, are explicitly identified in the attachment to the Transfer Agreement. (See id. at ECF p. 39.) Thus, it is plausible that, at the time of the assignment, the parties intended to assign to Li the rights to the Bubble Shooter Games as the game applications existed on the Google Play Store; that is, with the LinkDesks wording in their URL and package name. This makes sense based on the current record: The Bubble Shooter Games have been offered on the Google Play Store platform with the LinkDesks wording since as early as 2014. (Li Decl. ¶¶ 5-6.) Therefore, it is sensible to interpret the Transfer Agreement as assigning the right to use the Bubble Shooter Games with the LinkDesks wording. In further support of this interpretation is Defendant's representation that it is costly to change the URL associated with a game application, because it results in an entirely new application and the loss of the application's existing user base and corresponding revenue stream. (Id. ¶ 27.)

Although Plaintiff failed to apprise the Court of the Transfer Agreement in its TRO Motion, it offers several reasons why it should not be interpreted as assigning to Li the right to offer the Bubble Shooter Games with the LinkDesks wording.

However, at this stage of the proceedings, the Court disagrees. First, Plaintiff notes that LinkDesks is not listed in the Transfer Agreement as one of the assigned trademarks.   While true, Defendants disclaim any right to the LinkDesks mark.  (Li Decl. ¶ 26.)   Rather, Defendants desire to use the LinkDesks wording in the URL associated with the Bubble Shooter Games on the Google Play Store.   Thus, the fact that the Transfer Agreement did not assign the LinkDesks mark to Li has no bearing on the present dispute.

Plaintiff next argues that, because certain game applications listed in the attachment to the Shareholder Resolution explicitly include the application's package name, the absence of a package name for other applications, including the Bubble Shooter Games, shows by negative implication that the parties did not intend to assign the package name associated with the Bubble Shooter Games.   This is consistent with Plaintiff's effort to distinguish a game application's Google Play Store URL from a game application's package name.   It is true that one of the games subject to the Shareholder Resolution is identified by its package name.   (See Shareholder Resolution at ECF p. 22 (listing game application "PopStar" by package name).)   However, by the Shareholder Resolution's explicit terms, the PopStar game was "currently off the Android market."   (Id.)   Accordingly, it appears the parties identified the game application by package

name, rather than URL, because the application did not have a URL at the time the Shareholder Resolution was passed.

Even if the Court agreed with Plaintiff's interpretation of the Transfer Agreement, it is far from clear whether Defendants' use of the LinkDesks wording in its package name and URL constitutes trademark infringement. Plaintiff relies on one case, Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC, 2014 WL 4723299 (S.D.N.Y. Sept. 23, 2014), to support its trademark infringement claim. In Romeo & Juliette, plaintiff, a laser hair-removal service, used the names and marks "Romeo & Juliette" and "Romeo & Juliette Laser" to advertise its services on the internet. Id. at *1. Plaintiff alleged that defendants violated its trademarks by purchasing "search phrases" for "Romeo & Juliette" and "Romeo & Juliette Laser", which directed customers to defendants' website whenever they searched for "Romeo & Juliette". Id. Plaintiff also alleged that defendants used its name and mark in hidden links and text on its websites in order to deceive the public into believing that plaintiff sponsored defendants' hair-removal services. Id. The court held that plaintiff's trademark claims survived defendant's motion to dismiss, noting that defendants' conduct -- purchasing the search phrases and embedding links on its website -- was likely to confuse the public "because a person searching on the internet for hair-removal services using plaintiff's marks stood a strong chance of being directed to

10

defendants' website." Id. at *3.  First, Romeo & Juliette was decided in a different context than a request for a preliminary injunction.  Moreover, unlike Romeo & Juliette, Defendants here have a colorable claim to their use of the LinkDesks wording in their URL and package name under the Transfer Agreement.  Further, as Defendants point out in connection with their fair use defense, the LinkDesks wording is hidden from mobile users and only serves as a game identifier internally for Google Play.  If true, there would be no likelihood of confusion as the Court found in Romeo & Juliette.

Last, at this stage in the proceedings, Defendants have asserted colorable arguments that several equitable principles, including equitable estoppel, acquiescence, and laches, bar Plaintiff from showing likelihood of success on its trademark claim.  As Defendants point out, Ji signed the Huiwan Shareholder Resolution that assigned the Bubble Shooter Games to Defendants. (Defs. Br. at 9.)  Accordingly, Plaintiff has been aware of Defendants' use of LinkDesks wording in the URLs and package names since July 2018, when the Transfer Agreement was signed, but failed to object until June 2020.  (Defs. Br. at 10-12.)  In response, Plaintiff appears to argue that it was not aware of Defendants use of the URLs because the Transfer Agreement omits the LinkDesks trademark.  (Pl. Br. at ECF p. 6.)  But Plaintiff does not address the fact that the Transfer Agreement explicitly includes the Bubble

Shooter Game URLs with the LinkDesks wording.  Without more, the Court is unable to conclude whether Plaintiff failed to timely object to Defendants' alleged violation of its trademark.

As a result, Plaintiff cannot carry its burden by a clear showing that it is likely to succeed on the merits, such that the Court must issue this drastic remedy.

B. Irreparable Harm

As to irreparable harm, Defendants largely reiterate their arguments regarding Plaintiff's delay in objecting to Defendants' use of LinkDesks in their URLs, which shows that Plaintiff will not suffer immediate and irreparable harm.  (Defs. Br. at 13-14.)  As noted supra, the Court is not in a position to determine whether Plaintiff failed to timely object to Defendants' alleged trademark infringement, but the fact that Plaintiff signed the Shareholder Resolution in which the Bubble Shooter Games, with the LinkDesks wording, was assigned to Li undercuts its claim of irreparable harm.  Indeed, the Bubble Shooter Games have been on the Google Play Store using the LinkDesks wording in their URL for several years.  Thus, Plaintiff fails to establish that it is likely to suffer irreparable harm in the absence of preliminary relief.

C. Balance of Equities and Public Interest

Last, Plaintiff is unable to establish that the balance of the equities and public interest favor a preliminary injunction.

Although Plaintiff asserts that "Defendants' infringement can be cured simply by changing its package name easily" (Pl. Br. at ECF p. 5), Defendants strenuously dispute that point.  Without further discovery on this highly technical matter, the Court is unable to conclude whether altering Defendants' package name is as simple as Plaintiff claims.  On this basis, the motion must be denied.

CONCLUSION

Accordingly, Plaintiff's motion for a preliminary injunction (ECF No. 19) is DENIED.  The Clerk of the Court is directed to terminate all pending motions as MOOT.

SO ORDERED.

_/s/ JOANNA SEYBERT _____
Joanna Seybert, U.S.D.J.

Dated: December 18, 2020
       Central Islip, New York