UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SHANGHAI ZHENGLANG TECHNOLOGY
CO., LTD,

                                 Plaintiff,                  **ORDER**
                                                                   20-CV-5209 (JS) (ARL)
      -against-

MENGKU TECHNOLOGY CO., LTD, AND
QIANAN LI,
                              Defendants.
------------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

      Plaintiff Shanghai Zhenglang Technology Co., LTD ("Plaintiff") filed the original complaint in this action against Mengku Technology Co., LTD, and Qianan Li (collectively "Defendants") alleging, *inter alia*, trademark infringement, counterfeiting, false designation, unfair competition arising under the Lanham Act as well as New York State law claims. ECF No. 1. Presently before the Court is (1) Defendants' motion seeking permission to serve additional interrogatories on Plaintiff, ECF No. 60 and (2) Plaintiff's motions to quash third-party subpoenas and issue a protective order, ECF Nos. 65, 66. Each of the motions has been opposed. For the reasons set forth below, Defendants' motion seeking permission to serve additional interrogatories is granted and Plaintiff's motion to quash is denied.

## BACKGROUND

      On October 30, 2020, Plaintiff filed the complaint in this action against Defendants for infringing its "LinkDesks" trademark. This action is just the most recent volley in the parties' extended history of litigation arising out of the dissolution of an entity, Hangzhou Huiwan Tech Limited, of which both Defendant Li and Plaintiff's President, Ruihua Ji, were major shareholders. ECF No. 24 at 1. The assets of that entity were distributed pursuant to a

shareholder resolution and transfer agreement in 2018 and the dispute between the parties began. In the present action, Plaintiff alleges that Plaintiff has incorporated its trademark "LinkDesks" in the "package name" it uses on Google Play, where its games applications are offered. Compl. ¶ 7. According to Plaintiff, Defendants infringe on its trademark by utilizing the "LinkDesks" mark as a package name on Google Play for two of their game applications, Bubble Shooter Genies and Bubble Shooter Legend. On November 25, 2020, the District Court granted Plaintiff's motion for temporary restraining order enjoining Defendants from marketing and offering for download on Google Play mobile phone applications under the package name "LinkDesks," the same package name Plaintiff utilizes, pursuant to a federally recognized trademark, to offer similar applications on Google Play; and (2) directing non-parties Google, LLC and Google Play to temporarily hold, lock, and suspend Defendants' Google Play account and enjoining non-parties Google, LLC and Google Play from transferring, withdrawing, disposing of, or paying proceeds to or out of Defendants' Google Play account(s) with respect to the sale, or offer of sale, under the package name and/or product ID "LinkDesks," of Defendants' "Bubble Shooter Genies" and "Bubble Shooter Legend" applications. ECF No. 20. By its terms, the temporary restraining order expired fourteen days from entry. *Id.*

On December 18, 2020, following oral argument, the District Court issued an order denying Plaintiff's motion for a preliminary injunction . The Court found that "[a]t this stage of the proceedings, the Court is unable to find that Plaintiff establishes a likelihood of success on the merits because the scope of the assignment of rights under the Transfer Agreement is ambiguous, Plaintiff's trademark claim is novel, and Defendants' equitable arguments may have merit." ECF No. 29 at 7.

Defendants answered the Complaint on March 11, 2021. ECF No. 33. On April 13,

2021, this matter was referred to mediation, a mediator was selected on May 17, 2021 and the mediation took place on July 3, 2021. The mediation was unsuccessful. In the meantime, on July 14, 2021, Plaintiff filed a motion to amend the complaint seeking to add two new claims against Defendants. ECF No. 44. Defendants did not oppose Plaintiff's motion but rather filed a motion for leave to assert counterclaims against Plaintiff on August 2, 2021. ECF No. 46. On November 14, 2021, the Court granted Plaintiff's motion and allowed Defendants to assert their counterclaims within fourteen days of Plaintiff's service of its amended complaint. ECF No. 52. On November 17, 2021, Plaintiff filed its First Amended Complaint. ECF No. 54. On November 27, 2021, Defendants filed an answer and counterclaims asserting claims for federal trademark infringement, federal unfair competition, common law trademark infringement, common law unfair competition, and federal copyright infringement. ECF No. 55. On December 20, 2021, Plaintiff filed its answer and counterclaim asserting a claim for cancellation of Defendants' trademarks and seeking a declaratory judgment. ECF No. 57. On February 9, 2022, Plaintiff filed a motion to dismiss Defendants' copyright infringement claim. ECF No. 63. Defendants have opposed the motion.

With respect to interrogatories served by Defendants, on June 2, 2021 – prior to the filing of the Amended Complaint or the Counterclaims -- Defendants served their First Set of Interrogatories Nos. 1-14, which focused on Defendants' defenses against Plaintiff's infringement allegations and damage requests based on the LinkDesks Mark. On January 10, 2022, Defendants served its Second Set of Interrogatories Nos. 15-25, focused on damage related topics. Defendants now seek permission to serve Interrogatories Nos. 26-41 which relate to Plaintiff's unauthorized use of Defendant Mengku's Trademarks in connection with Plaintiff's goods/services and Interrogatories Nos. 42-58 which relate to Plaintiff's unauthorized use and

exploitation of the works which were subject of Defendant Mengku's copyrights. ECF No. 60. Plaintiff opposes the motion. ECF No. 61.

Additionally, on February 3, 2022, Defendants served subpoenas on Apple Inc., Google LLC, Meta Platforms, Inc., and Unity Software Inc. Plaintiff has moved to quash the subpoenas because, according to Plaintiff, "the subpoenas seek, among other things, documents sufficient to show Plaintiff's 'daily revenue and/or sales' and 'daily number of downloads' of its Bubble Shooter Game 'worldwide' from 'September 29, 2019 to present.' . . . Plaintiff considers its daily download numbers and revenues for its Bubble Shooter Game to be highly confidential and commercially sensitive, particularly given that Defendants are direct competitors." ECF No. 66. Defendants have opposed the motion. ECF No. 67.

## **DISCUSSION**

**I.      Number of Interrogatories**

Defendants seek leave to serve a third set of interrogatories containing 32 interrogatories,[1] which, as discussed above, relate to Plaintiff's unauthorized use of Defendant Mengku's Trademarks in connection with Plaintiff's goods/services and Plaintiff's unauthorized use and exploitation of the works which were subject of Defendant Mengku's copyrights. ECF No. 60.

Rule 33(a)(1) provides that "a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts. Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(2)." Rule 26 provides that "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule

---

[1] The Court notes that Defendants have filed this motion to take additional discovery, despite their opposition to Plaintiff's request for an extension of the discovery deadline. *See* ECF No. 71.

4

if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Rule 26(b)(2)(C).

"The party seeking leave to serve more than 25 interrogatories 'must set forth a 'particularized showing' to exceed the limit." *Black v. Buffalo Meat Serv., Inc.*, No. 15-CV-49, 2016 U.S. Dist. LEXIS 108526, 2016 WL 4363506, at *7 (W.D.N.Y. Aug. 16, 2016) (citations omitted). "Courts grant leave to exceed the limit when the benefit of discovery outweighs the potential burden on the responding party.... Courts generally deny requests for more than 25 interrogatories initially, preferring instead to consider requests to add interrogatories after a party has served 25 interrogatories and argues that additional interrogatories are needed." *Douglas v. Harry N. Abrams, Inc.,* No. 13-CV-2613, 2016 U.S. Dist. LEXIS 197578, 2016 WL 11645646, at *3 (S.D.N.Y. Aug. 23, 2016) (citing *Black,* 2016 U.S. Dist. LEXIS 108526, 2016 WL 4363506, at *7). Plaintiff here argues that Defendants' request for permission to serve additional interrogatories should be denied because the additional interrogatories are burdensome to Plaintiff because the discovery sought is unreasonably cumulative or duplicative and the requested information is in the equal possession of Defendants. ECF No. 61. Plaintiff's also urge the Court to reject Defendants' arguments that the interrogatories are needed because (1) the case has gotten more complex since the original interrogatories were served and (2) of the difficulties in conducting depositions in Hong Kong or Macao in light of the pandemic warrant

5

the expanded use of interrogatories.

Prior to Plaintiff's filing of the Amended Complaint and Defendants' assertion of counter claims, Defendants served 14 interrogatories. Following Defendants' assertion of counter-claims for trademark and copyright infringement, Defendants' served an additional 11 interrogatories on the issue of damages. Now, Defendants argue that because of the complex nature of this action Defendants seek the Court's permission to serve a proposed Third Set of Interrogatories Nos. 26-58 which are limited to claims made in Defendants' counterclaim, as well as Plaintiff's counterclaim for a declaration that the marks are invalid. The Court finds that Defendants have demonstrated the need for the additional interrogatories in light of the changing complexities of the case. The addition of Defendants' counterclaims and Plaintiff's counterclaim seeking declaratory relief and the cancellation of Defendants' marks provide ample justification for the additional interrogatories. Contrary to Plaintiff's assertion, the interrogatories are not duplicative of previously served interrogatories nor are they unduly burdensome. Accordingly, Defendants' request for permission to serve additional interrogatories is ganted.

## II. Subpoenas Addressed to Third Parties

Plaintiff has moved to quash subpoenas addressed to Apple Inc., Google LLC, Meta Platforms, Inc., and Unity Software Inc. because, according to Plaintiff, "the subpoenas seek, among other things, documents sufficient to show Plaintiff's 'daily revenue and/or sales' and 'daily number of downloads' of its Bubble Shooter Game 'worldwide' from 'September 29, 2019 to present.' . . . Plaintiff considers its daily download numbers and revenues for its Bubble Shooter Game to be highly confidential and commercially sensitive, particularly given that Defendants are direct competitors." ECF No. 66.[2] Plaintiff contends that this privacy concern

---

[2] Plaintiff filed a motion to quash the subpoenas on March 1, 2022. ECF No. 66. Then, on March 2, 2022, Plaintiff

6

gives Plaintiff standing to challenge the subpoenas on the grounds that Plaintiff's extraterritorial revenues and download information are not relevant to this action in the United States concerning rights in the United States and are therefore not discoverable. *Id*. Defendants argue that Plaintiff publishes and operates its games via the Google Play platform and the Apple App Store platform which are located in the United States and therefore "these services are all based and rendered inside the U.S. Users worldwide receive such services via Plaintiff's Accused Games. Given Defendant's trademarks cover '[e]lectronic games services provided by means of the internet,' these services likely infringe Defendant's trademark rights. Here, Plaintiff could have used non-U.S. based (e.g., China based) computer servers or services to handle these in-game services. But it intentionally chose the U.S." ECF No. 67.

Rule 45 provides in pertinent part that "a person commanded to produce [documents] may . . . serve . . . a written objection to inspecting . . . any or all of the designated materials." Fed. R. Civ. P. 45(c)(2)(B). "A plain reading of this provision would suggest that only a person to whom the subpoena is issued may seek to quash the subpoena." *In re Rule 45 Subpoena Issued to Cablevision Sys. Corp.,* No. 08-347 (ARR) (MDG), 2010 U.S. Dist. LEXIS 40653, 2010 WL 2219343, at * 4 (E.D.N.Y. Feb. 5, 2010). "Ordinarily, a party lacks standing to challenge a subpoena served on a non-party unless the party asserts or establishes a personal right or privilege with regard to the subpoenaed information." *Allstate Ins. Co. v. A & F Med. P.C.*, No. 14-CV-6756, 2016 U.S. Dist. LEXIS 168554, 2016 WL 7116067, at *2 (E.D.N.Y. Dec. 6, 2016); *see Estate of Ungar v. Palestinian Auth*., 332 Fed. App'x 643, 645 (2d Cir. 2009) (collecting authorities); *Universitas Educ., LLC v. Nova Grp., Inc*., No. 11 Civ. 1590, 2013 U.S. Dist.

---

filed a second motion to quash the same subpoenas, without withdrawing the first motion. The Court presumes Plaintiff intends to withdraw the first motion and rely upon the second, which addresses Plaintiff's standing to onject to the subpoenas.

LEXIS 1720, 2013 WL 57892, at *5 (S.D.N.Y. Jan. 4, 2013) ("A party lacks standing to challenge subpoenas issued to non-parties on the grounds of relevancy or undue burden."). "Examples of such personal rights or privileges include the personal privacy right and privilege with respect to the information contained in [ ] psychiatric and mental health records, claims of attorney-client privilege, and other privacy interests, including those relating to salary information and personnel records." *A & R Body Specialty & Collision Works, Inc.*, 2013 U.S. Dist. LEXIS 173865, 2013 WL 6511934, at *2. Plaintiff argues that it has standing to move to quash this motion because it "'is seeking to protect a personal privilege or right,' namely, the protection from disclosure of its highly sensitive financial information. . . . The Subpoenas—to Apple Inc., Google LLC, Meta Platforms, Inc., and Unity Software Inc.—seek, among other things, documents sufficient to show Plaintiff's "daily revenue and/or sales" and "daily number of downloads" of its Bubble Shooter Game "worldwide" from "September 29, 2019 to present.'" ECF No. 66.

Plaintiff claims to have a privacy interest in the revenues it received from each of the subpoenaed entities, however, there is no indication that there was an agreement between any of the entities and Plaintiff that this information was to remain confidential. *See, e.g., Almazo v. M.A. Angeliades, Inc.*, 11 Civ. 1717 (MGC), 2015 U.S. Dist. LEXIS 152698, at *12, 2015 WL (S.D.N.Y. Nov. 10, 2015). Unlike employment personal files or personal banking statements, there is no privacy interest at stake concerning business transactions between two unrelated entities. *See, e.g., Sali v. Zwanger,* No. 19 Civ. 275 (FB) (CLP), 2022 U.S. Dist. LEXIS 48699, 2022 WL 1085508, at *18 (E.D.N.Y. Jan. 10, 2022) ("Information regarding whether defendant rented space in this location and for how long is not like the type of information that would be obtained from an individual's bank or employment records, which have previously been found

sufficient as a privacy interest.).  "In order for a party to have standing to challenge a subpoena served on a non-party, there must be more than a conclusory assertion that the subpoenas seek documents that are private, confidential, and commercially sensitive." *Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.,* No. 13 Civ. 1654 (RA) (HBP), 2014 U.S. Dist. LEXIS 155009, 2014 WL 5420225, at *4 (S.D.N.Y. Oct. 24, 2014) (internal quotation mark omitted).

Indeed, any concerns Plaintiff has regarding allowing Defendants access to competitive information can be addressed by an "Attorney's Eyes Only" confidentiality agreement.  *See In re Novartis & Par Antitrust Litig.*, Case No. 19-mc-00149, 2019 U.S. Dist. LEXIS 191606, 2019 WL 5722055, at * 4 (E.D. Pa. Nov. 5, 2019); *Direct Purchaser Class Plaintiffs v. Apotex Corp.*, No. 16-62492-MC-ZLOCH, 2017 U.S. Dist. LEXIS 159585, 2017 WL 4230124, at *5 (S.D. Fla. May 15, 2017) ( (ordering non-party produce generic drug sales documents under protective order, including documents its deems highly confidential for "Attorney's Eyes Only"); *Covey Oil v. Continental Oil Co.,* 340 F.2d 993 (10th Cir. 1965) (ordering production of documents only available to counsel and independent certified public accountants for "Attorney's Eyes Only"); *Verisign, Inc. v. XYZ.com, LLC*, Case No. 15-175, 2015 U.S. Dist. LEXIS 162772, 2015 WL 7960976 (D. Del. Dec. 4, 2015) (ordering production of confidential financial and sales information to competitor under "Attorney's Eyes Only" designation).

Accordingly, the Court finds Plaintiff lacks standing to object to the subpoenas addressed to Apple Inc., Google LLC, Meta Platforms, Inc., and Unity Software Inc.

The Court is aware that the parties attempted unsuccessfully to reach an agreement through mediation last year but reminds the parties that in the event the parties believe that further settlement discussions with the court will be fruitful they are directed to submit a joint request for additional mediation in writing.

Dated: Central Islip, New York
May 9, 2022

**SO ORDERED:**

_____/s_____
ARLENE R. LINDSAY
United States Magistrate Judge